IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FELIX D. WHITTINGTON,                  :          CIVIL ACTION
                                       :
             Plaintiff                 :
                                       :
      v.                               :
                                       :
DONALD VAUGHN, et al.,                 :
                                       :
             Defendants                :          No. 02-4346

## <u>ORDER</u>

AND NOW, this      day of          2003, upon consideration of the Commonwealth

defendants' motion for summary judgment and Plaintiff's response hereto (if any), it is

ORDERED that the said motion is GRANTED.  Judgment is entered in favor of SCI Graterford,

Feild, Canino, Vaughn, DiGuglielmo, Buzzar, and Smith and against Plaintiff.


                                        BY THE COURT:


                                        _____
                                        MARVIN KATS,    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FELIX D. WHITTINGTON,      :      CIVIL ACTION
                           :
          Plaintiff       :
                           :
      v.                 :
                           :
DONALD VAUGHN, et al.,      :
                           :
         Defendants    :     No. 02-4346

## COMMONWEALTH DEFNDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants the State Correctional Institution at Graterford ("SCI Graterford"), Feild, Canino, Vaughn, DiGuglielmo, Buzzar, and Smith (collectively, the "Commonwealth defendants), move the Court, pursuant to Fed.R.Civ.P. 56, to enter judgment in their favor, and aver as follows:

1.  Based upon the facts as submitted in the pleadings, in Plaintiff's deposition, and in the affidavits of defendants Francis "Skip" Feild and [PRISON RECORD OFFICIAL] (attached as Exh. D-3), there is no genuine issue as to any material fact.

2.  The Commonwealth defendants are entitled to judgment as a matter of law because:

    a.  Defendant SCI Graterford and the individual Commonwealth defendants in their official capacities are protected from suit for damages by virtue of the Eleventh Amendment and the "person" requirement of 42 U.S.C. § 1983.

    b.  Plaintiff's civil rights have not been violated for the following reasons:

        (i)    Defendant Feild never forcibly medicated Plaintiff with psychotropic medication.

    (ii)    Plaintiff does not have a liberty interest in remaining free from a more restrictive type of custody.

    (iii)    Plaintiff received all the process due at each of his misconduct hearings before defendant Canino.

    (iv)    Defendant Vaughn's upholding of the misconduct hearing decisions is not be a constitutional violation.

d.  Even if a civil rights violation did occur, defendants DiGuglielmo, Buzzar, and Smith were not personally involved in any of these violations.

e.  Even if a civil rights violation did occur, the Commonwealth defendants are protected from liability for damages by qualified immunity.

This motion is supported by the attached memorandum of law.

WHEREFORE, the Commonwealth defendants pray for an order granting judgment in their favor, thereby dismissing all claims by Plaintiff against them and affording such further relief as is just and proper.

<div align="right">

D. MICHAEL FISHER
ATTORNEY GENERAL

BY:      s/ Kevin Bradford
        Kevin R. Bradford
        Deputy Attorney General
        Identification No. 88576

        Susan J. Forney
        Chief Deputy Attorney General
        Chief, Litigation Section

</div>

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FELIX D. WHITTINGTON, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| DONALD VAUGHN, et al., | : | |
| | : | |
| Defendants | : | No. 02-4346 |

## MEMORANDUM IN SUPPORT OF COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    STATEMENT OF THE CASE

Plaintiff, Felix Whittington, an inmate currently incarcerated at the State Correctional Institution at Greene, Pennsylvania ("SCI Greene") has filed a civil rights complaint naming a variety of defendants.  The following Commonwealth of Pennsylvania employees and entities are among those named as defendants: the State Correctional Institution at Graterford ("SCI Graterford"); Donald Vaughn, the ex-Superintendent of SCI Graterford and current Deputy Secretary of the Eastern Region of the Pennsylvania Department of Corrections ("DOC"); Mary Canino, a DOC Hearing Examiner; and Francis "Skip" Feild, a Major at SCI Graterford (collectively, "Commonwealth defendants").  There are other Commonwealth employees that are not listed in the caption of the Complaint nor on the Court's docket, but are named on page 2 of Plaintiff's Complaint in a section where each defendant is to be described.  Exhibit. D-1 at § III. These individuals are David DiGuglielmo, the ex-Deputy for Facility Management and current Acting Superintendent at SCI Graterford; Thomas Buzzar, a Major at SCI Graterford; and Guy Smith, a Captain at SCI Graterford.  For the sake of clarity and comprehensiveness, the

aforementioned Commonwealth agency and employees will all be considered defendants and collectively referred to as the "Commonwealth defendants" from this point forward.

Plaintiff's Complaint, which is a fill-in-the-blanks form used by inmates to initiate civil rights proceedings, does not specify his theory of liability as to any of the defendants. The Complaint was originally filed on May 6, 2002 in United States District for the Middle District of Pennsylvania. On June 28, 2002, this case was transferred to the Eastern District. Beginning on July 15, 2002 and continuing until at least June 19, 2003, Plaintiff has regularly mailed letters to this Court. On each occasion, this Court has ordered that the clerk file the correspondence of record. On November 18, 2002, this Court ordered a Special Report from the DOC regarding Plaintiff's custody status, classification, medical and psychiatric status, and disciplinary history. The Special Report was received by the Court and filed on December 18, 2002. Exh. D-2. On June 12, 2003, because of the minimal information in the Complaint, the Commonwealth defendants filed a motion for a more definite statement. On June 19, 2003, the Court denied this motion without prejudice and ordered that the necessary information be gathered through discovery.

Following a deposition of Plaintiff, where Plaintiff had a full opportunity to address any and all claims against the Commonwealth defendants, it is clear that Plaintiff's alleged civil rights violations are based upon the following actions: (1) defendant Feild's efforts to get Plaintiff to take psychotropic medication, (2) defendant Canino's actions at misconduct hearings, and (3) defendant Vaughn's unfavorable responses to Plaintiff's misconduct appeals.

Defendant SCI Graterford moves for summary judgment since this Court lacks jurisdiction over this party. The remaining Commonwealth defendants move for summary judgment since they are immune from damages suits in their official capacities and, in their

individual capacities, have not violated Plaintiff's civil rights.  Additionally, even if the Court

finds that any of the Commonwealth defendants did violate the Plaintiff's civil rights, they are all

protected from liability for damages by qualified immunity.

## II.    STATEMENT OF THE UNDISPUTED FACTS

Plaintiff is in DOC custody serving a life sentence for a Murder conviction.  Pl. Dep. at 6-

7.[1]  From 1994 until 2002, Plaintiff was serving this sentence at SCI Graterford.  Plaintiffs'

claims arise from this time served at SCI Graterford.

Plaintiff is an admitted schizophrenic.  Pl. Dep. at 7.  He is six feet, two inches tall and

approximately 253 pounds.  Id. at 5.  Plaintiff has a history of violent behavior and fire starting.

Exh. D-2.  Plaintiff admits to hearing voices and having mood swings.  Id. at 56, 66.  Plaintiff

also believes that he is being controlled or attempted to be controlled through his ears by

"security monitoring defenses with an electronic device" while at various DOC facilities

throughout the state, including SCI Graterford.  Id. at 64.  Plaintiff's behavior has caused other

inmates to be afraid of him.  Pl. Dep. at 72; Feild Decl., Attachment 1.[2]

During Plaintiff's stay at SCI Graterford, there were times when Plaintiff would take the

psychotropic medications,[3] prescribed to address his schizophrenia, and there were times that he

would refuse to take these medications.  Pl. Dep. at 12-14, 36-39; Feild Decl. ¶ 5.

---

[1] Plaintiff's Deposition is attached to this motion as Exhibit D-3 and will be referred to as "Pl.
Dep." throughout the memorandum.

[2] Defendant Feild's Declaration is attached to this motion as Exhibit D-11 and will be referred to
as "Feild Decl." throughout the memorandum.

[3] Psychotropic medications, which are also referred to as "antipsychotic drugs," are medications
commonly used in treating mental disorders such as schizophrenia.  Washington v. Harper, 494
U.S. 210, 214 (1990) (citing Brief for American Psychiatric Association et al., as Amici Curiae
2-3, n. 1).  The effect of these drugs is "to alter the chemical balance in the brain, the desired
result being that the medication will assist the patient in organizing his or her thought processes
and regaining a rational state of mind."  Id.

Plaintiff first had contact with defendant Feild in 1995. Pl. Dep. at 9. At all relevant times, defendant Feild was a Unit Manager of the Special Needs Units at SCI Graterford. Feild Decl., ¶ 4. From 1995 until Plaintiff's eventual transfer to SCI Albion in 2002, Plaintiff and defendant Feild had frequent discussions regarding Plaintiff's psychotropic medications. Pl. Dep. at 9; Feild Decl. ¶ 5. On at least one occasion, Plaintiff told defendant Feild about the voices he hears and the "security monitoring defenses." Pl. Dep. at 66. These discussions took place either in the form of Program Review Committee Hearings, which were scheduled meetings also attended by two other prison officials, or as more informal discussions with just defendant Feild in his office. Pl. Dep. at 9-11; Feild Decl. ¶ 5. The informal meetings almost always took place as a result of disruptive or unusual behavior by Plaintiff. Id. When defendant Feild had meetings with Plaintiff, he often urged Plaintiff to take his psychotropic medication and Plaintiff always agreed to comply, at least temporarily. Id.

One time, during one of their informal meetings called as a result of Plaintiff's behavior, defendant Feild told Plaintiff that he would be issued what Plaintiff believed to be a misconduct if he refused to take his medication. Pl. Dep. at 45, 50; D-1 at 2.[4] Plaintiff agreed to take his medication. Id. Defendant Feild did not issue a misconduct or file any other document as a result of this discussion. Feild Decl. ¶ 7; Pl.'s Dep. at 14. Defendant Feild never issued Plaintiff a single misconduct throughout his incarceration at SCI Graterford (1995 to 2002). Feild Decl. ¶ 7; Pl.'s Dep. at 50.

---

[4] Plaintiff believed at this meeting there was a misconduct on defendant Feild's desk. Pl. Dep. at 45. Defendant Feild states that, at this meeting, he had on his desk a form used transfer inmates to the Restricted Housing Unit in administrative custody (non-disciplinary purposes). Feild Decl. ¶ 7. The form used to do this is the same form used to issue misconducts. Id.

Plaintiff did receive numerous misconducts from other prison officials during this time period.  Pl. Dep. at 21-35; Exhs. D-5 to D-11.[5]  On every single occasion that Plaintiff received a misconduct while at SCI Graterford, he was not taking his psychotropic medications.  Pl. Dep.  The descriptions of each of these misconducts are as follows:

On January 29, 1996, Plaintiff was charged with refusing to obey an order; presence in an unauthorized area; and lying to an employee (misconduct number 769252).  Plaintiff has a misconduct hearing before Hearing Examiner Donald Jones, who found Plaintiff guilty of refusing to obey an order and presence in an unauthorized area and sentenced Plaintiff to 30 days cell restriction.  Exh. D-5; Pl. Dep. at 21-23.

On September 8, 1996, Plaintiff was charged with refusing to obey an order and using abusive or obscene language to an employee (misconduct number 852035).  On this occasion, the misconduct Hearing Examiner was defendant Mary Canino.  Plaintiff pled guilty to using abusive or obscene language to an employee.  Defendant Canino found that Plaintiff was not guilty of the other charge and ordered that he lose his prison job for the charge that he pled guilty to.  Exh. D-6; Pl. Dep. at 23-24.

On November 2, 1996, Plaintiff was charged with threatening an employee or their family (misconduct number 864258).  Defendant Canino found Plaintiff guilty and ordered 60 days disciplinary custody.[6]  Exh. D-7; Pl. Dep. at 24-26.

---

[5] Copies of each misconduct report and the accompanying witness/assistance request forms, inmate version forms, hearing reports, and appeals to the Superintendent (if any) are attached to this motion as exhibits D-4 through D-10.  At his deposition, Plaintiff acknowledged each of these misconducts and the hearings addressing them.  Pl. Dep. at 21-35.

[6] "Disciplinary custody is the 'maximum restrictive status of confinement' for inmates in the Pennsylvania prison system."  Mitchell v. Horn, 318 F.3d 523, 532 n.5 (3d Cir. 2003) (*quoting* DC-ADM 801 IV(B)).

On August 6, 1997, Plaintiff was charged with refusing to obey an order and lying to an employee (misconduct number 788971). Hearing Examiner Donald James found Plaintiff guilty of both charges and sentenced him to 60 days disciplinary custody. Exh. D-8; Pl. Dep. 26-28.

On December 20, 2000, Plaintiff was charged with threatening an employee or their family with bodily harm (misconduct number A-327942). Following Plaintiff's plea of guilty to the charge, Defendant Canino ordered Plaintiff to serve 60 days disciplinary custody and lose his prison job. Exh. D-9; Pl. Dep. at 28-30.

On April 20, 2001, Plaintiff was charged with threatening an employee or their family with bodily harm; indecent exposure; and refusing to obey an order (misconduct number A-327928). Defendant Canino found plaintiff guilty of the three charges and ordered 270 days disciplinary custody. Exh. D-10; Pl. Dep. at 31-33.

On October 5, 2001, Plaintiff was charged with assault; threatening an employee or their family with bodily harm; using abusive, obscene, or inappropriate language to an employee; refusing to obey an order; and lying to an employee (misconduct number A-293982). Plaintiff pled guilty to using abusive, obscene, or inappropriate language to an employee. Defendant Canino found Plaintiff guilty of the remaining charges, except for lying to an employee, and ordered 180 days of disciplinary custody. Exh. D-11; Pl. Dep. at 34-35.

Plaintiff appealed misconduct numbers A-327942 and A-327928 to defendant Vaughn who was the Superintendent of SCI Graterford at the time. Defendant Vaughn responded to the appeals, upholding defendant Canino's rulings on both occasions. Exh. D-9, D-10; Pl. Dep. 71-72.

Aside from being named on page 2 of Plaintiff's Complaint in the "Defendants" section, DiGuglielmo, Buzzar, and Smith, are not referred to anywhere else in the Complaint. Exh. D-1. Furthermore, not one of these names came up during Plaintiff's deposition.

**III.    ARGUMENT**

**A. Summary Judgment Standards.**

The Court should enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The motion must be granted unless the nonmoving party designates specific facts in discovery materials or affidavits showing a genuine material factual issue that can only be resolved by a trial or unless the law does not support the motion. Id. at 324; Fed.R.Civ.P. 56(e).

"Material" facts are those that might affect the outcome of the suit under the substantive law governing the claims made. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" in light of the burdens of proof required by substantive law. Id. at 248-250, 252-255. Stated another way, the court must enter summary judgment against a nonmoving party who fails to make a factual showing sufficient to permit a reasonable jury to find an element essential to that party's case and on which that party bears the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. at 323. Evidence that is "merely colorable" or "not significantly probative" or a mere "scintilla" will not defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-252, 256, 257; Miller v. City of Philadelphia, 174 F.3d 368, 377 (3d Cir. 1999). Conclusory statements are not facts and cannot create issues of fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 889 (1990).

### B. By Virtue of the Eleventh Amendment, this Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims against SCI Graterford.

The Eleventh Amendment to the U.S. Constitution immunizes states and their agencies from suit in the federal courts. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI. It is well-established that the Eleventh Amendment immunizes states and state agencies from federal court suits by private parties. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy, 506 U.S. 139 (1993); Dellmuth v. Muth, 491 U.S. 223 (1989); Welch v. Texas Dept. of Highways, 483 U.S. 468 (1987); Atascadero State Hospital v. Scanlon, 473 U.S. 234 (1985); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89 (1984).

Eleventh Amendment immunity protects a state from suits regardless of whether the party is a citizen of that state or not, Pennhurst, 465 U.S. at 100, and regardless of the type of relief sought. Id. at 98. This immunity extends "to suits against departments or agencies of the state having no existence apart from the state." Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981), cert. denied, 469 U.S. 886 (1984).

There are two ways to get around a state's Eleventh Amendment immunity. A state may consent to being sued or Congress may specifically abrogate this immunity pursuant to a valid exercise of power. *See* Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000).

While a state may consent to be sued in federal court, thereby waiving its immunity, Pennsylvania has not done so. To the contrary, as noted in Laskaris, 661 F.2d at 25, by virtue of 42 Pa.C.S. § 8521 (b), Pennsylvania has explicitly withheld its consent, thereby retaining to the fullest possible extent the immunity afforded by the Eleventh Amendment.

Eleventh Amendment immunity may also be bypassed when Congress specifically abrogates this immunity pursuant to a valid exercise of power. Wheeling and Lake Erie Railway Co. v. Public Utility Commission of the Commonwealth of Pennsylvania, 141 F.3d 88, 91 (3d Cir. 1998). However, "Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983." Petsinger v. Pa. Department of Transportation, 211 F.Supp.2d 610, 613 (E.D.Pa. 2002) (*citing* O'Hara v. Ind. Univ. of Pa., 171 F.Supp. 490, 495 (W.D.Pa. 2001)).

It is well-established that the DOC is part of the executive branch of the Commonwealth of Pennsylvania and, therefore, an arm of the state entitled to Eleventh Amendment immunity. *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000); Bey v. Pennsylvania Dept. of Corrections, 98 F.Supp.2d 650, 657 (E.D.Pa. 2000); 71 P.S. § 61. Individual DOC state correctional institutions are merely subdivisions of the DOC and are also considered arms of the state entitled to Eleventh Amendment immunity. *See* Demyun v. Pennsylvania Department of Corrections, No. 00-0155, 2001 WL 1083936, at *3 (M.D.Pa. Sept. 14, 2001). *See also* Bey, 98 F.Supp.2d at 657 (DOC's Program Review Committees are arms of the state since they are run exclusively by and through the DOC).

- 9 -

Since SCI Graterford is a state entity entitled to Eleventh Amendment protection, there exists no subject matter jurisdiction over this party.

### C.  SCI Graterford is not a "Person" for § 1983 Purposes.

In addition to the protection of Eleventh Amendment immunity, states cannot be sued under § 1983. This statute provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).  The Supreme Court has specifically ruled that states and their agencies are not considered "persons" for purposes of this statute and thus cannot be subject to claims brought pursuant to § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58 (1989).  *See also,* Fidtler v. Pennsylvania Department of Corrections, 55 Fed.Appx. 33, 2002 WL 31648368 (3d Cir. 2002).  The Court explained that governmental entities that are "arms of the state" are not considered persons.  Will, at 70.

As explained above, the DOC, including SCI Graterford, is an arm of the state.  Thus SCI Graterford is not a "person" for purposes of § 1983 and cannot be sued under this statute.

### D.  Plaintiff's Damages Claims against the Remaining Commonwealth Defendants in their Official Capacities are Barred.[7]

State officials, when acting in their official capacities, receive the same protection from suit provided to their governmental entity.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  In other words, "[a] suit against a state official in his or her official capacity is not a suit against the

---

[7] The complaint is not clear as to whether the Commonwealth defendants are sued in their official or individual capacities, or both.  Therefore, this memorandum will address Plaintiff's claims as they relate to both the official and individual capacities of these defendants.

official, but rather a suit against the official's office...As such, it is no different than a suit against the state itself." <u>Chladek v. Commonwealth of Pa.</u>, No. 97-0355, 1998 WL 54345, at *5 (E.D.Pa. Jan. 29, 1998), *citing* <u>Will</u>, 491 U.S. at 71.

Defendants Vaughn, Canino, Feild, DiGuglielmo, Buzzar, and Smith are all state actors by virtue of their employment with the DOC. In their official capacities, they receive the same protection from damages suits provided by law to their employer, the DOC.

As noted above, the DOC is immune from suit by virtue of Eleventh Amendment immunity, as well as the "person" requirement of § 1983. A damages suit against these DOC employees, in their official capacities, is precluded for these same reasons.[8]

### E. As a Matter of Law, Defendants Feild, Canino, and Vaughn, in their Individual Capacities, have not Violated Plaintiff's civil rights.

Plaintiff fails to articulate the specific civil rights that he believes have been violated by the Commonwealth defendants. A potential, but unsuccessful, argument is that defendant Feild's requests to Plaintiff to take psychotropic medication violated Plaintiff's due process rights.

#### 1. Defendant Feild

In <u>Washington v. Harper</u>, 494 U.S. 210 (1990), the Supreme Court addressed the involuntary administration of antipsychotic drugs[9] through forcible injection to a schizophrenic Washington state prisoner. The Court, in addressing the prisoner's substantive due process

---

[8] It should be noted that, pursuant to the <u>Ex parte Young</u> doctrine, state officials are not shielded from suit in their official capacities where prospective injunctive relief is sought. *See* <u>Koslow v. Commonwealth of Pennsylvania</u>, 302 F.3d 161, 168 (3d Cir. 2002); <u>Ex parte Young</u>, 209 U.S. 123, 159-160 (1908). Plaintiff's Complaint mentions that he seeks compensation and does not appear to request any form of prospective injunctive relief. Furthermore, since Plaintiff is no longer incarcerated at SCI Graterford, the location of all of the Commonwealth defendants, any such claim would be moot. *See* <u>Sutton v. Rasheed</u>, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the complained of facility generally moots the equitable and declaratory claims").

[9] "Antipsychotic drugs" is another word for "psychotropic drugs." <u>Harper</u>, 494 U.S. at 214.

rights, held that, while prisoners have a "significant liberty interest" in not taking unwanted

antipsychotic medications, this interest may be overcome where the prisoner has a serious mental

illness, is dangerous to others, and treatment is in the prisoner's best interest. Id. at 227.

While the instant Plaintiff's mental diagnosis is quite similar to the plaintiff in Harper,

the facts regarding the administration of the instant Plaintiff's medication are quite different.

Namely, the instant Plaintiff has never been forcibly injected with antipsychotic medication by

defendant Feild or anyone else. Although Plaintiff characterizes defendant Feild's

recommendations to Plaintiff to take his antipsychotic medication to treat his schizophrenia as

forcing Plaintiff to take his medication, this is simply not true. Plaintiff was permitted to refuse

the medication. There were numerous occasions during his time at SCI Graterford when

Plaintiff was not taking medications. As Plaintiff freely admits, at the times of each of his seven

misconducts that he incurred at SCI Graterford, he was not taking his medication.

While Plaintiff was sanctioned for his misbehavior, he was never punished for not taking

his psychotropic medications. Defendant Feild simply urged Plaintiff to take this medication.

Even the one incident, where defendant Feild was going to send Plaintiff to the Restricted

Housing Unit ("RHU") as a result of his disruptive behavior unless he took his medication, did

not amount to the involuntary medication of Plaintiff. Plaintiff had the option taking or refusing

the medication. Any transfer to a different location of the prison as a result of this decision

would not give rise any Constitutional claims, regardless of whether it was for administrative or

disciplinary purposes.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court held that a inmate's

transfer to a more intensive type of custody for disciplinary reasons does not create a liberty

interest, implicating due process rights, unless the change "imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 486. Subsequent to Sandin, the Courts of this Circuit have repeatedly held that temporary transfers to SCI Graterford's RHU, whether for administrative or disciplinary reasons, do not impose such hardships and thus do not create a possible due process violation.  *See* Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997); Johnston v. Vaughn, No. 00-1844, 2000 WL 1694029 (E.D.Pa. Nov. 13, 2000); Rauso v. Vaughn, No. 96-6977, 2000 WL 873285 (E.D.Pa. Jun. 26, 2000).

While Plaintiff did spend a significant period of time in the RHU as a result of his misconducts, none of the charges related to the failure of Plaintiff to take his psychotropic medication.  Furthermore, even if Plaintiff had been transferred to the RHU at SCI Graterford for simply not taking his medication (something that Plaintiff acknowledges never happened), no due process rights would be implicated by such action.

Since the only allegations against defendant Feild involve his requests to Plaintiff to take his psychotropic medication and these actions cannot be considered a civil rights violation, the claims against this defendant cannot stand.

## 2.  Defendant Canino

Plaintiff's claims against defendant Canino center upon her role as Hearing Examiner in several of Plaintiff's misconduct hearings.  Defendant Canino was the Hearing Examiner for five of Plaintiff's misconduct hearings.  Plaintiff alleges that of these five hearings, three involved the violation of his civil rights.

The three misconducts Plaintiff complains about are the last three he received before his departure from SCI Graterford in 2002, numbers A-327942, A-327928, and A-293982. Plaintiff's claims have to do with the denial of witnesses and counsel at these hearings and the

sentences imposed by defendant Canino.  Presumably, Plaintiff argues that these conditions violated his due process rights.

In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) the Supreme Court outlined the due process requirements applicable in prisoner disciplinary proceedings.  The Court held that a prisoner is entitled to advance written notice of the charges, a written statement by the fact-finder identifying the evidence relied upon and reason for the disciplinary action taken, and the opportunity to present evidence and call witnesses.  <u>Id.</u> at 563-67.  The Court noted that prison officials should be given broad discretion in permitting witnesses and that "there must be mutual accommodations between institutional needs and objectives and the provisions of the Constitution that are of general application."  <u>Id.</u> at 556, 566-67.

The <u>Wolff</u> court also explained that there is no right to counsel at prison disciplinary hearings.  418 U.S. at 570.  Where the prisoner is illiterate or, "due to the complexity of the issue, the prisoner would be unable to collect and present the evidence necessary for an adequate comprehension of the case" the prisoner may seek the assistance of a fellow prisoner or, if unavailable, be assisted by staff.  <u>Id.</u>

In light of <u>Wolff</u>, Plaintiff's claims based upon the failure of defendant Canino to provide him with counsel are baseless.  Plaintiff did request assistance in all three misconduct hearings, but did not specify any particular individual he sought assistance from.  Plaintiff requested that he be provided with a lawyer in two of his requests and "inmate and or staff" in the third.  However, Plaintiff has never alleged that he is illiterate or baffled by the issues these misconducts involve.  In misconducts A-327942 and A-327928 defendant Canino addressed these concerns in writing next to Plaintiff's assistance request by noting that he did not need assistance.

Plaintiff's claims regarding his witnesses are likewise without merit.   Plaintiff pled guilty to misconduct number A-327942 which, as defendant Canino noted in writing, negated the need for any witnesses.

At the hearing for misconduct number A-327928, Corrections Officer Miller appeared pursuant to Plaintiff's request.  Plaintiff had requested six prison guards to appear as witnesses. Pursuant to prison regulations, inmates are permitted a maximum of three witnesses and only one of these three may be a staff member.  Plaintiff selected Officer Miller.  It is not clear whether the "Inmate Brown," the only non-staff member requested, was present.  However Plaintiff provides no reason on the request form as to this witness' relevance.  This omission means Plaintiff has not complied with the prison's witness request procedure.

The third misconduct hearing that Plaintiff alleges he was denied witnesses for is number A-293982.  Plaintiff requested two corrections officers as witnesses.  This request was rejected by defendant Canino because Plaintiff's witness request form was not timely submitted, as it was handed in at the time of the hearing.  The witness request form clearly states that it must be submitted by 9:00 a.m. the first working day after the inmate receives notice of the hearing. Plaintiff admits that his request was not timely, but offers an excuse.  He claims that he had filled it out in a timely manner, but he was unable to submit it because none of the guards on his cellblock would accept it.

In Rauso v. Vaughn, No. 96-6977, 2000 WL 873285 (E.D.Pa. Jun. 26, 2000), another court of this district was faced with a strikingly similar factual background and argument.  In Rauso, an SCI Graterford inmate who had a misconduct hearing before defendant Canino had his witness request denied because it was untimely.  The inmate, who had claimed the reason for the

delay was because he did not have a pencil, argued the denial of witnesses was a due process violation.

The Court found that SCI Graterford's policy of requiring timely notice of witnesses is necessary to meet the legitimate needs and objections of the institution. The determination of whether the inmate complied with the rule and whether failure to comply should warrant denial of witnesses is within the discretion of hearing examiner. The examiner should have "some evidence" supporting the decision. The Court also noted that even if the examiner had abused her discretion, it was harmless error since the requested witness was the author of the misconduct report, which contained his version of the events.

In the instant matter, Defendant Canino ruled that Plaintiff could not have his two witnesses present since he submitted his witness request form at the start of the hearing. Defendant Canino made the decision despite Plaintiff's excuse, which he provided to her. Even if defendant Canino abused her discretion (a point not conceded), the error was harmless since the primary witness Plaintiff requested was Corrections Officer Heffinger who had authored the misconduct report which contained his version of the facts that formed the basis of the misconduct. The only other witness requested was Corrections Officer Huson, Jr., who Plaintiff admits was not present at the time the misconduct was issued and whose only involvement was that he served Plaintiff with the notice of the misconduct hearing. Thus, his testimony would be immaterial.

Plaintiff's final civil rights claim against defendant Canino appears to be that he generally unhappy with her decisions regarding his guilt and sentence imposed. Plaintiff points to nothing specific regarding this allegation other than the fact that Plaintiff believes he is being "targeted" by prison officials. He further alleges that if defendant Canino had more thoroughly

"investigated" the charges she would realize that on each occasion Plaintiff's behavior, while in violation of the rules was justified which - in turn - would alter her decisions regarding his guilt and sentencing.

The Supreme Court has held that the decisions of a prison disciplinary board meet due process requirements so long as there is "some evidence" supporting the decision. Superintendent, Mass. Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455-56 (1985). The Court explained that the relevant inquiry is "whether there is any evidence in the record that could support the conclusion." Id.[10]

All three of defendant Canino's decisions that Plaintiff complains about easily meet this standard. As noted, Plaintiff pled guilty to misconduct number A-327942.

In misconduct number A-327928, the misconduct report supports all three of the charges Plaintiff was charged with. Even Plaintiff's written version of the events generally coincides with the actions described in the misconduct report. There was an abundance of evidence supporting defendant Canino's decision to find Plaintiff guilty.

In misconduct A-293982, the misconduct report gives a detailed explanation of the facts leading to the misconduct issuance. Plaintiff pled guilty to one of the charges and not guilty to the four others. After plaintiff presented his version of the events, defendant Canino found Plaintiff guilty of the four remaining charges. The facts provided in the misconduct report supported defendant Canino's decision. The misconduct report alone provides enough evidence to meet the "some evidence" standard. Carter v. Kane, 938 F.Supp. 282, 287 (E.D.Pa. 1996).

---

[10] It should be noted that, unlike the instant Plaintiff, the inmate in Hill was actually deprived of a liberty interest as a result of the decision, since he had lost good time credits. Id. at 455.

Likewise Plaintiff's sentences for violating prison rules do not raise due process violations. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeter of the sentence imposed by a court law." <u>Sandin</u>, 515 U.S. at 485.

### 3. Defendant Vaughn

Defendant's claims against defendant Vaughn are based solely upon the fact that he sustained the actions of Defendant Canino. Plaintiff appealed misconducts A-327928 and A-327942 to defendant Vaughn who upheld the decisions since there were no procedural errors at the hearings.

There is no constitutional right to administrative appeals of prison disciplinary hearings, so any decision of Vaughn in this role has no constitutional significance. <u>Garfield v. Davis</u>, 566 F.Supp. 1069, 1074 (E.D.Pa. 1983). Additionally, since the claims against defendant Canino are without merit (see § E., 2., above), the claims against Vaughn cannot stand. *See* <u>Bey v. Pa. Dept. of Corrections</u>, 98 F.Supp.2d 650, 664 (E.D.Pa. 2000). It is well-established that the theory of *respondeat superior* is inapplicable for civil rights violations by individuals acting under color of state law. <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993).[11]

### F. As a Matter of Law, the Remaining Commonwealth Defendants, in their Individual Capacities, have not Violated Plaintiff's Civil Rights.

For acts allegedly taken in their individual capacity, "'defendant[s] in a civil rights action must have personal involvement' to be liable." <u>Sutton v. Rasheed</u>, 323 F.3d 236, 249 (3d Cir. 2003) (*quoting* <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)). This involvement may also be demonstrated through allegations of participation or actual knowledge and

---

[11] Plaintiff did mention at his deposition that he was dissatisfied with his transfer from SCI Graterford to another prison. Pl. Dep. at 46-47. Presumably, this claim would be against defendant Vaughn who, as the Superintendent, would authorize the transfer. However, this claim also fails to raise any constitutional issues. "An inmate has no protectible liberty interest in remaining in one place of incarceration as opposed to another." <u>Debrose v. Chesney</u>, No. 95-6813, 1996 WL 4093, at *3 (E.D.Pa. 1996). *See also* <u>Meachum v. Fano</u>, 427 U.S. 215 (1976).

acquiescence in the violation.  Rode, 845 F.3d at 1207.  None of the remaining Commonwealth defendants are even alleged to have personally participated in a violation.

DiGuglielmo, Buzzar, and Smith, whose names appear in the "Defendants" section of Plaintiff's Complaint, are not mentioned anywhere else in the Complaint, including the "Statement of the Case" section which instructions the writer to list each defendants' involvement.  Additionally, Plaintiff did not make reference to these three individuals during his deposition.

The omission of a defendant's name from the material allegations of a complaint justifies dismissal of the complaint against that defendant.  Marvasi v. Shorty, 70 F.R.D. 14, 22-23 (E.D.Pa. 1976) (citing United States ex rel. Tyler v. Speaker, 471 F.2d 1197 (3d Cir. 1973)).  By the same token, where there is no indication in the pleadings that a defendant played any role in the challenged conduct, the claims against that defendant are subject to dismissal.  E.g., Eckford-El v. Toombs, 760 F.Supp. 1267, 1272-73 (W.D. Mich. 1991); Hodgin v. Agents of Montgomery County, 619 F.Supp. 1550, 1554 (E.D.Pa. 1985).

Since DiGuglielmo, Buzzar, and Smith had absolutely no personal involvement in the alleged civil rights violations, any damages claims against them in their individual capacities should be dismissed.

### G.  Even if any of the Commonwealth Defendants did violate Plaintiff's Civil Rights, they are Protected from Damages Liability by Qualified Immunity.

The Commonwealth defendants, as state officials, are entitled to the protection of qualified immunity.  Qualified immunity protects government officials from damages liability in § 1983 suits unless there has been a constitutional violation of a clearly established right.  Conn v. Gabbert, 526 U.S. 286, 290 (1999).

In determining the applicability of this immunity, the initial inquiry is whether there has in fact been a constitutional violation.  Hope v. Pelzer, 536 U.S. 730, 736 (2002), *citing* Saucier v. Katz, 533 U.S. 194, 201 (2001).  The Commonwealth defendants have argued extensively up to this point that Plaintiff has suffered no violation of his constitutional rights.

If the Court, despite Commonwealth defendants' argument to the contrary, finds that a constitutional violation has occurred, the second step is to determine whether the right violated was clearly established.  Hope, 536 U.S. at 739, *citing* Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope, 536 U.S. at 739 (*quoting* Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The alleged rights in question here - the right of schizophrenic inmate to be free from requests to take his psychotropic medication and the right to have counsel and any desired witnesses at a prison misconduct hearing - if existent at all, are certainly not clearly established.

Given the lengthy and complex set of facts and precedent discussed in detail above, it was objectively reasonable for the Commonwealth defendants to act in the manner they did.  Since reasonable prison officials, like the Commonwealth defendants, would have been unaware of any civil rights violations resulting from their conduct, the right was not clearly established.

Even if any of the Commonwealth defendants did, somehow violate Plaintiff's constitutional rights, any violation was not of a clearly established right.  Thus, they are shielded from a § 1983 damages claim by qualified immunity.

## IV.    CONCLUSION

Since the material facts are undisputed, judgment in this matter should be entered in favor of the Commonwealth defendants as a matter of law, pursuant to Fed.R.Civ.P. 56.

<div style="margin-left:50%">

D. MICHAEL FISHER
ATTORNEY GENERAL

BY:      s/  Kevin Bradford
Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

</div>

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FELIX D. WHITTINGTON,              :       CIVIL ACTION
                                   :
            Plaintiff              :
                                   :
      v.                           :
                                   :
DONALD VAUGHN, et al.,             :
                                   :
            Defendants             :       No. 02-4346

**CERTIFICATE OF SERVICE**

     I, Kevin R. Bradford, Deputy Attorney General, hereby certify that the within Answer of Respondents was electronically filed and is available for viewing and downloading from the ECF system at https://ecf.paed.uscourts.gov/.

     I further certify that a true and correct copy of this document was mailed on October 14, 2003, by first class mail, postage prepaid to:

     Felix D. Whittington
     Inmate No. AY-4935
     State Correctional Institution
      at Greene
     175 Progress Drive
     Waynesburg, PA 15370

                    D. MICHAEL FISHER
                    ATTORNEY GENERAL

          BY:    s/  Kevin Bradford
                    Kevin R. Bradford
                    Deputy Attorney General
                    Identification No. 88576

                    Susan J. Forney
                    Chief Deputy Attorney General
                    Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262